O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER D.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 5:18-cv-00192-KES<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**BACKGROUND**

In March 2015, Sylvester D. ("Plaintiff") filed an application for supplemental security income ("SSI") alleging a disability onset date of June 15, 2012. Administrative Record ("AR") 395-403.

An Administrative Law Judge ("ALJ") conducted multiple hearings at which Plaintiff, who was represented by counsel, appeared and testified, as did vocational

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

experts ("VE").[2] On October 18, 2017, the ALJ issued a decision denying Plaintiff's SSI application and also adjudicating Plaintiff's claim for Social Security Disability Insurance Benefits, as instructed by the Appeals Council on remand from a prior unfavorable decision. AR 12-31.

The ALJ found that Plaintiff suffered from the medically determinable impairments of "learning disorder, polysubstance dependence in full remission, depressive disorder, status post open reduction internal fixation right elbow, degenerative disc disease, hernia, diabetes mellitus, peripheral neuropathy, and liver disease." AR 20. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, i.e., lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; standing, sitting, or walking for 6 hours out of an 8 hour day; occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; frequently handling with the dominant right upper extremity; and limiting Plaintiff to simple, routine, repetitive tasks that do not require abstract reasoning, noting that Plaintiff is illiterate. AR 23.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could do his past relevant work as a home attendant/care giver, identified by the Dictionary of Occupation Titles ("DOT") as 354.377-014, not as generally performed but as Plaintiff actually performed it. AR 30. The ALJ concluded that Plaintiff was not disabled. Id.

## II.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits.

---

[2] The three hearings occurred on July 5, 2017 (AR 38-87), October 26, 2016 (AR 88-122), and June 2, 2016 (AR 123-35).

The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ erred at step four of the sequential evaluation process by finding that Plaintiff' work as a home attendant qualified as past relevant work. (Dkt. 23, Joint Stipulation ["JS"] at 5.)

## IV.
## STEP FOUR OF SEQUENTIAL ANALYSIS

At step four, claimants have the burden to show that they are no longer able to perform their past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th

3

Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner may deny benefits at step four if the claimant has the RFC to perform either a particular past relevant job as "actually performed," or the same kind of work as "generally" performed in the national economy. Pinto, 249 F.3d at 844-45 (citing Social Security Ruling ("SSR") 82-61); SSR 82-62 at *3. Social Security regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn it." 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a), 416.960(b)(1), 416.965(a).

"Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). The primary factor used to determine whether a claimant was engaged in substantial gainful activity ("SGA") at a particular job is the amount of earnings a claimant derived from the job. Le v. Astrue, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008). "There is a rebuttable presumption that the employee either was or was not engaged in SGA if his or her average monthly earnings are above or below a certain amount established by the Commissioner's Earnings Guidelines." Id.; Lewis, 236 F.3d at 515 ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."). For example, for 2009, an employee would be presumed to have engaged in work at an SGA level in a particular month if his average monthly earnings exceeded $980. See 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii); Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, Social Security Administration Program Operation Manual System ("POMS") § DI 10501.015(B). A claimant may rebut the presumption that he was engaged in SGA at a prior job by presenting evidence that he was employed under "special conditions" which "[took] into account [her] impairment"—for example, the claimant "required and received special assistance from other employees," the claimant was "allowed to work

irregular hours or take frequent rest periods," or the claimant was permitted to work despite his impairments due to a family relationship. 20 C.F.R. §§ 404.1573(c), 416.973(c).

When classifying a claimant's past relevant job as "actually" performed, ALJs look to "a properly completed vocational report" and the claimant's testimony. Pinto, 249 F.3d at 845 (citing SSR 82-41, 82-61).

# V.

# DISCUSSION

A. **Summary of Relevant Evidence and Administrative Proceedings.**

　　1. **Plaintiff's Past Work.**

From 2005 to 2010, Plaintiff worked as a home attendant assisting Yvonne Battles, a wheelchair user receiving kidney dialysis.[3] AR 94-96, 186. Plaintiff met Ms. Battles on a party line phone. AR 94, 106. After a five-month acquaintance, her mother suggested that Plaintiff might be able to help Ms. Battles and get paid through In Home Support Services ("IHSS"), a state-funded program that helps pay for services for the disabled or aged. See http://www.cdss.ca.gov /In-Home-Supportive-Services. The mother, who lived with Ms. Battles, helped Plaintiff complete the application and his timesheets. AR 70, 73-74, 107. He received $1,136 per month. AR 62, 425. His checks were mailed to the Battles home. AR 74.

The position was not full-time, and Plaintiff did not live at the Battles home. AR 58-59. Plaintiff did not have regular hours; when the mother or uncle needed Plaintiff, they would call him, "somewhat" every day. AR 69. He would travel one half hour to their house by bus, bike, or a ride from a friend. AR 75.

Once at work, he would help Ms. Battles in several ways. He would help

---

[3] Ms. Battles is now deceased. AR 94. In 2014, Plaintiff testified that he stopped working for her when she died. See AR 142.

her transfer into her wheelchair by making sure she did not fall, but this did not involve lifting or pulling. AR 65, 98. He would wait with her outside the house for the dialysis van. AR 96. He was not required to lift anything heavier than 10 pounds. AR 72. He did not push her wheelchair because it was electric. AR 78.

He would talk to her during the day. AR 60. He did not assist her with bathing, dressing, using the bathroom, or taking medication. AR 62, 78, 95, 100. He did not do laundry or cooking, but sometimes he swept the tile floors, took out the trash, and did other light cleaning. AR 61, 66, 97, 127-28. Sometimes he accompanied her to the store, either walking or taking the bus with her. AR 67-68, 97. He did not drive her anywhere, because he never passed the driver's licensing test.[4] AR 92, 99-100. Sometimes he took a cab ride with her to medical appointments. AR 98-99.

### 2. Plaintiff's Past SSI Applications.

Plaintiff previously applied for SSI benefits and was found "not disabled" in June 2014. AR 126, 160. The prior ALJ found that Plaintiff could do medium work but had no prior work. AR 167, 170. That decision was not appealed. AR 128. Instead, Plaintiff filed a new application that is the subject of this appeal.

### 3. The VE's Testimony.

Based on his description of his prior work, the VE characterized it as home attendant or home health aide. AR 71. The DOT describes that job as follows:

> Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other

---

[4] In July 2016, Plaintiff told a psychiatrist who evaluated him that his driver's license had expired and he did not renew it. See AR 1053; see also AR 140 (testifying in 2014 that he had not driven for years).

> members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands.

DOT 354.377-014. The job is classified as medium with a specific vocational preparation ("SVP") of 3, meaning it is semi-skilled. AR 72.

The VE testified that this job is performed in "a great variety of ways." AR 71. While Plaintiff did not perform all the tasks in the DOT description, the VE noted that he did perform light cleaning, accompany her on outings, assist her in and out of her wheelchair, and talk with her. Id. Based on Plaintiff's own description, he did not perform it at the medium exertional level, but instead lifted less than 10 pounds. AR 72. The VE noted that Plaintiff was performing reasoning that involved concrete variables (and not merely following one or two-step instructions) because he kept an on-call schedule and would accompany Ms. Battles on the bus. AR 80-81, 83. He was not, however, performing the job consistent with a SVP 3 rating, because he did not drive or assist with medications. AR 114-15 (October 2016 hearing). The VE opined that a hypothetical person with Plaintiff's RFC could perform this work as Plaintiff actually performed it. AR 81-82.

Plaintiff's counsel stipulated that this work constituted substantial gainful activity. AR 48 ("I stipulate … that there was SGA."). Plaintiff's counsel argued,

7

however, that the job did not constitute past relevant work because it was performed in an accommodated or sheltered setting rather than a competitive setting. AR 49. Counsel likened it to working for a friend with no requirements. Id. The ALJ responded that Plaintiff was getting paid for his work, suggesting that it was a competitive job unless they were "misleading the state." Id.

The ALJ found that Plaintiff was "able to perform this past relevant work as actually performed" based on the VE's testimony. AR 29-30. The ALJ addressed counsel's argument that this work was not past relevant work, as follows:

> The claimant's attorney argued that the above job should not be considered as the claimant's past relevant work because the claimant did not perform the job at either the exertional level or SVP level delineated in the DOT. The attorney did not provide any additional evidence that would allow the characterization of the claimant's past work. I am satisfied with the testimony of the vocational expert that the job described as the proper classification of the claimant's past work.
>
> The claimant's attorney later argues that the above job should not be considered as the claimant's past relevant work because it was performed in a sheltered work environment. He conceded the claimant's earnings were at the level of substantial gainful activity; however, he asserted the claimant's performance of this job was akin to working for a friend without requirements. I do not find this argument persuasive. The vocational expert testified that the job of home attendance allows for a very wide range of duties and abilities. In fact, the vocational expert pointed out that the duties described by the claimant, such as sweeping the patient's house, assisting the patient from the bed to a wheelchair, and accompanying the patient to the store, are included in the description of home attendance. Thus, I

>    do not accept the argument that the claimant performed the job of
>    caregiver (home attendant) in a sheltered environment.
>
>    I note that it is the claimant's burden to show why he is unable
>    to perform his past relevant work as actually performed. This burden
>    has not been met.

AR 30.

B. **Analysis of Claimed Error.**

Plaintiff contends that the ALJs step four finding is not supported by substantial evidence. (JS at 5-6.)

### 1. Categorization

Plaintiff first argues that the ALJ miscategorized Plaintiff's past work. (See JS at 7.) Plaintiff's sole argument is that Plaintiff did not perform the job of caregiver as described in the DOT, because Plaintiff did not drive Ms. Battles anywhere or help her with medication. (See id.) This is precisely why the ALJ focused on how Plaintiff actually performed the job. The DOT is "the best source for how a job is generally performed." Pinto, 249 F.3d at 845 (emphasis added). Here, when classifying Plaintiff's past job as actually performed, the ALJ properly looked to Plaintiff's testimony and completed vocational report. Pinto, 249 F.3d at 845. Plaintiff's testimony reflected many tasks that a caregiver would perform, as noted by the VE. See AR 71.

### 2. Sheltered Work.

Plaintiff also contends that the ALJ erred by finding that Plaintiff's work for Ms. Battles was performed in a competitive setting as opposed to an accommodated or sheltered setting, such that it was not substantial gainful activity. (JS at 9.)

At step four of the sequential evaluation process, prior work experience constitutes past relevant work if (1) it was done within the last 15 years, (2) lasted long enough for the claimant to learn to do it, and (3) was substantial gainful

activity. 20 C.F.R. §§ 404.1565, 416.965.

Elements (1) and (2) are undisputed. Plaintiff worked as a home attendant for Ms. Battles for 6 years between 2005 and 2010. AR 94, 409-10, 471.

Regarding element (3), Plaintiff's counsel stipulated that this work was substantial gainful activity. AR 48 ("I stipulate … that there was SGA."). Because this stipulation was followed by the same argument raised now on appeal (i.e., that Plaintiff performed the job in an accommodated or sheltered setting), the Court interprets this as stipulating only that the amount of Plaintiff's compensation exceeded the statutory minimum for substantial gainful activity.

The concept of substantial gainful activity involves the amount of compensation *and* the substantiality and gainfulness of the activity itself. Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990). "The mere existence of earnings over the statutory minimum is not dispositive." Id. Consistent with this, the Social Security Act describes sheltered work as work "done under special conditions," including simple tasks by a handicapped person under close and continuous supervision, or where the employer pays more for the work than the value of the work that is performed, in effect subsidizing the work. 20 C.F.R. §§ 404.1573, 404.1574(a)(2), 416.973, 416.974(a)(2). "The claimant may rebut a presumption based on earnings with evidence of his inability to . . . perform the job well, without special assistance, or for only brief periods of time." Keyes, 894 F.2d at 1056. Among the factors to be considered are "how well the person is able to perform the work" and "special conditions under which the work is performed." Id. The regulations provide in pertinent part:

> We consider how well you do your work when we determine whether or not you are doing substantial gainful activity. If you do your work satisfactorily, this may show that you are working at the substantial gainful activity level. If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without

more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level. If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, or to the operation of a business if you are self-employed, this does not show that you are working at the substantial gainful activity level.

20 C.F.R. §§ 404.1573(b), 416.973(b). The regulations further provide that work performed under special circumstances might not be considered substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c). Among factors that may be considered in making this determination are situations in which:

(1) You required and received special assistance from other employees in performing your work;

(2) You were allowed to work irregular hours or take frequent rest periods;

(3) You were provided with special equipment or were assigned work especially suited to your impairment;

(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. §§ 404.1573(c), 416.973(c).

The Court compares these factors to the evidence of record, as follows:

• <u>Job Performance</u>: There is no evidence that Plaintiff's employers were ever

dissatisfied with his job performance. They employed him for more than 5 years, and Plaintiff testified in 2014 that he stopped working for her because she passed away. See AR 142. Because Plaintiff still bears the burden of proof at step four, the ALJ was entitled to presume that Plaintiff did his job satisfactorily absent any evidence to the contrary. This factor weighs in favor of finding Plaintiff's job setting competitive.

     • <u>Special Supervision or Assistance</u>: There is no evidence that Plaintiff required special supervision to perform his job duties satisfactorily. He and Ms. Battles went on outings unaccompanied, such as when he walked with her outside or took a bus with her to the store. AR 67-68, 97. Plaintiff did not provide any evidence concerning how he decided which light cleaning jobs to tackle or what supervision he received. This factor weighs in favor of finding Plaintiff's job setting competitive.

     • <u>Minimal Duties or Productivity</u>: Plaintiff was required to be on call and available on an almost daily basis. AR 69. He was required to make his own way to and from the Battles home. AR 75. He was required to spend time accompanying Ms. Battles on outings, entertaining her with conversation, and assisting her with cleaning tasks. AR 60, 61, 66-68, 97-99, 127-28. The Battles family must have believed this work had value, or they would not have represented to the state that Plaintiff should receive compensation for it. This factor weighs in favor of finding Plaintiff's job setting competitive.

     • <u>Irregular Hours</u>: While Plaintiff was not required to work a regular, fulltime schedule, his "on call" schedule did not permit him to make his own hours or take time off whenever he wanted. Instead, his job duties required him to be available when his employers needed him. This factor weighs in favor of finding Plaintiff's job setting competitive.

     • <u>Special Work Assignments</u>: Plaintiff was not required to do all of the tasks in the DOT's description of home health aide work. This, however, does not

necessarily represent a sheltered work environment. The VE testified that "there is a great variety of ways that the [home attendant] job is performed in the industry, depending on the assignment and the particular needs of the individual." AR 71. This factor, therefore, has little weight in this context.

• <u>Special Arrangements</u>: Plaintiff could prepare for work and travel to/from work on his own. There was evidence, however, that Plaintiff did not go through a competitive job application process. Ms. Battles's mother helped him prepare all the necessary IHSS paperwork, including his timesheets. This factor weighs slightly in favor of finding his work sheltered.

• <u>Special Relationships</u>: Prior to working for them, Plaintiff had no relationship with the Battles family other than an acquaintance over the party line. If Plaintiff had not provided satisfactory assistance, there is no reason to think that the family would not have terminated him and obtained state-funded help from someone else. This factor weighs in favor of finding Plaintiff's job setting competitive.

Based on this analysis, the ALJ's finding that Plaintiff's work for the Battles was past relevant work is supported by substantial evidence.

### 3. Prior Proceedings and Statements.

Plaintiff suggests that the ALJ is bound by a statement he made at the second hearing: "I think the limitations described now, he's not able to do his past work. … Let's say that's a given." AR 101; (JS at 7). The ALJ's written decision is the final decision of the Commissioner. See <u>Muro v. Astrue</u>, No. EDCV 07-1169 JC, 2008 WL 5076448, at *9 (C.D. Cal. Nov. 28, 2008) ("Plaintiff contends that a remand is necessary because the ALJ's decision to discount plaintiff's allegations is directly inconsistent with his own comment at the hearing that plaintiff was a 'credible witness.' . . . This argument is unavailing. Although the ALJ may well have initially viewed plaintiff as credible at the hearing, he clearly revised that opinion by the time he generated the final written decision which is

before this Court for review.").

Plaintiff also suggests that the 2014 ALJ's finding that Plaintiff has no past relevant work is binding (or at least persuasive). (JS at 8, citing AR 170.) The ALJ who conducted the hearings and wrote the decision currently under review explained that he adopted a different finding regarding Plaintiff's work experience than the ALJ who authored the 2014 opinion. See AR 17. Even Plaintiff's attorney at the hearings noted that he could not understand how the first ALJ found that Plaintiff had no past relevant work at substantial gainful activity levels, given Plaintiff's own work history report. See AR 46, 126-27. Plaintiff cites no authority and makes no reasoned argument to contest the second ALJ's decision to decline to give res judicata effect to the first ALJ's findings regarding Plaintiff's work experience.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: December 18, 2018

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge